18326

Jerome DOUGLASS, Appellant, v. Essie B. PERRY, William L. Perry, Jerry Perry and Percival Perry, Respondents

(141 S. E. (2d) 348)

*Messrs. deLoach & deLoach,* of Camden, *for Appellant,*

*H. F. Bell, Esq.,* of Chesterfield, *for Respondents,*

March 31, 1965.

Moss, Justice.

Jerome Douglass, the appellant herein, the plaintiff below, and Essie B. Perry, William L. Perry, Jerry Perry and Percival Perry, the respondents herein, and the defendants below, are adjoining landowners. The pleadings placed in issue title to approximately thirty acres of land lying north of Horse Pen Branch and encompassed on a plat made by Will Clark, surveyor, on January 12, 1943. The defendants claim Horse Pen Branch as the boundary line between their premises and those of the plaintiff. The plaintiff claims title to the area north of Horse Pen Branch, as shown on the aforesaid plat.

This case was referred to the Master for Chesterfield County for the sole purpose of taking the testimony. Thereafter, the case was heard by the Honorable C. Bruce Littlejohn, Presiding Judge, upon the record certified to him by the Master. After having considered such record and having heard full argument by counsel for all parties, the trial Judge, on May 4, 1964, issued his order in which he found that the defendants have title to the area in dispute which lies north of Horse Pen Branch. The plaintiff has appealed to this Court from such order.

The appellant asserts that his exceptions raise the following question:

"Does Appellant own the premises included within the area of the plat of his property (Plaintiff's Exhibit No. 8) or is Horse Pen Branch the boundary line between premises of Appellant and premises of Respondents?"

This action is one of trespass to try title and the ·appellant must recover, if at all, on the strength of his own title; and the burden was upon him to prove paramount title to the land. This being an action at law, the conclusions of fact of the lower Court are binding upon this Court unless they are without evidentiary support. *Lynch v. Lynch,* 236 S. C. 612, 115 S. E. (2d) 301; *Marsh Plywood Corporation v. Graham,* 240 S. C. 486, 126 S. E. (2d) 510. Likewise, the issue of adverse possession being a legal one, our factual review of it is limited to a determination of whether there is any evidence reasonably sustaining the findings of the lower Court. *Mullis v. Winchester,* 237 S. C. 487, 118 S. E. (2d) 61.

The issue before this Court, as made by the appellant's exceptions, is whether there was any testimony to sustain the findings of fact of the Circuit Judge. A careful review of the entire record convinces us that the clear weight of the evidence fully supports the findings of fact made by the Circuit Judge and we are satisfied that his order, which will be reported herewith, correctly disposed of all issues before him.

The exceptions of the appellant are overruled and the judgment below is affirmed.

TAYLOR, C. J., LEWIS AND BUSSEY, JJ., AND LIONEL K. LEGGE, Acting J., concur.

The order of Judge Littlejohn follows:

This action was commenced by service of Summons and Complaint on the defendants in May, 1961. The Complaint alleges that plaintiff owns a one hundred forty-two (142) acre tract of land situate in Chesterfield County, South Carolina, and that the defendants have trespassed thereon, and have cut and removed certain timber from said premises.

Plaintiff further alleges that the said trespasses were on the area of said premises lying north of Horse Pen Branch; that the defendants erroneously claim said area, which claim constitutes a cloud on plaintiff's title. The plaintiff prays that the defendants be enjoined from claiming any interest in the said premises and for an accounting by the defendants for timber cut from said premises.

The defendants in due time answered the Complaint and denied that they had trespassed on plaintiff's premises and allege that they are owners and in possession of that area north of Horse Pen Branch, and that Horse Pen Branch is the boundary line between the property of plaintiff and defendants. The defendants further allege that they and their predecessors in title have been in the exclusive, continuous, hostile and adverse possession of the area in dispute for a period of ten (10) years, and a period of twenty (20) years, prior to the commencement of this action, and further allege that neither the plaintiff nor his predecessors in title have been in possession of that area in dispute within ten (10), twenty (20), or forty (40) years.

The case was thereafter referred to the Master for Chesterfield County for the specific purpose of taking testimony. The testimony presented before the Master was transcribed and submitted to me, and thereafter I heard full argument by counsel for all parties.

Since this is an action of trespass to try title, the plaintiff in order to recover must prove title in himself and cannot rely on the weakness of his adversary's title. *Warren v. Wilson,* 89 S. C. 420, 71 S. E. 818, 992.

The plaintiff claims title under a deed from Archie Mills dated August 11, 1943, and the description in this deed is as follows:

"All that certain piece, parcel or tract of land, situate, lying and being in Cole Hill Township, Chesterfield County, South Carolina, containing one hundred forty-two (142) acres, more or less and bounded as follows: North by lands

of Angus Douglass; East by lands of Thomas Watson; South by lands of A. E. Smith and Walter Oliver; and on the West by the right of way of Route 85 project 823, and by lands of Walter Oliver, known as the Black Creek Tract, said highway being the dividing line between the tract herein conveyed from a 24 acre tract heretofore conveyed to John Clanton a corner on said highway and running northeastward with the 24 acre tract conveyed to John Clanton down to Horse Pen Branch, thence up the said Horse Pen Branch to a direct bend in said branch in Watson line, same being the same and entire tract of land of 66 (166) acres heretofore conveyed to me by deed of J. F. McLeod with the exception of the 24 acres tract conveyed to John Clanton the northwestern corner of the place, said deed from J. F. McLeod being recorded in Deed Book 89 at page 61 in the office of Clerk of Court for Chesterfield County, South Carolina."

This deed does not refer to a plat; however, the plaintiff introduced into evidence as his Exhibit No. 8 a plat made by Will Clark purporting to be the lands owned by the plaintiff. Upon careful consideration of the description as set out in the deed and comparing this description with the plat (plaintiff's Exhibit No. 8), it is clear that the description does not include any area lying north of Horse Pen Branch. I am convinced that the conveyance from Archie Mills to the plaintiff does not include the area north of Horse Pen Branch which is the area in dispute and this should end the case; however, much testimony was taken concerning other issues which I shall touch on briefly and give my opinion thereabout.

The plaintiff introduced a chain of title going back to 1880 and the lands now owned by plaintiff were at one time owned by William P. Oliver. After the death of said William P. Oliver prior to 1900, the lands were partitioned and his daughter, Maggie E. Blackwell, was alloted Tract No. 3 of the Black Creek Tract. Plaintiff introduced a plat of the Oliver partition and Tract No. 3 did show an area extending

north of Horse Pen Branch, and plaintiff takes the position that this old plat is proof that he has title to the area north of Horse Pen Branch as shown on the Oliver plat. None of the deeds in plaintiff's chain of title referred to the Oliver plat and the language in various of the deeds was "known as part of Black Creek Tract" and the language in the deed from Maggie E. Blackwell to D. H. McGregor was "known as part of Black Creek Tract (No. 3)". I cannot see how the language in these deeds can be construed to perfect plaintiff's title particularly in view of the restrictive language in the deed from Archie Mills to plaintiff.

Another strong reason why plaintiff cannot prevail is that his predecessor in title, J. F. McLeod, testified that the boundary line was Horse Pen Branch and that when he owned the property he cut the timber on the premises and did not cut timber on any of the area north of Horse Pen Branch. There is also testimony in the record that in 1940 the value of the timber on the area in dispute was approximately Two Thousand and no/100 ($2,000.00) Dollars and the record discloses that the plaintiff purchased the property from Archie Mills in 1943 for One Thousand and no/100 ($1,000.00) Dollars and that Mr. Mills at the time was in the business of dealing in timber and would have known the value of the timber on the area in dispute.

Turning now to defendants' proof of title. The defendant, Essie B. Perry, is the widow and the other defendants are the sons of W. J. Perry, deceased. W. J. Perry was a practicing physician for many years in Chesterfield and died testate in 1954 and by his Last Will and Testament devised all of his property to the defendants. Dr. W. J. Perry purchased a five hundred fifty (550) acre tract of land which included the area in dispute from T. H. Douglass in the year 1915. The deed from T. H. Douglass to Dr. W. J. Perry referred to a plat made by J. H. Sellars in 1913. A copy of the J. H. Sellars plat was introduced into evidence by the defendants as their Exhibit No. 1 and this plat shows Horse Pen Branch to be the southern boundary line between the property pur-

chased by Dr. Perry and the property now owned by the plaintiff.

In 1919 Dr. Perry had a survey made of the property by a Major Paige who cut the property up into parcels and made a plat thereof. Dr. Perry then sold at public auction several parcels of the original tract; however, he did not sell the parcel on which is located the area in dispute. The Paige plat, a copy of which was introduced into evidence, also shows the southern boundary line to be Horse Pen Branch.

The evidence is clear that the defendants and their predecessors in title have been in the open, notorious, adverse, and exclusive possession of the area in dispute since before 1915. There is abundant evidence that timber was cut from the premises by the defendants and their predecessors in title. Other acts of possession including paying of taxes, cutting and hauling of wood, clearing and farming approximately five and one-half (5½) acres of the area in dispute for many years prior to the death of Dr. W. J. Perry are clearly sufficient to warrant the Court in holding that the defendants have title to the area in dispute by adverse possession. There is also evidence in the case from two (2) land surveyors that in their opinion the defendants own the area in dispute.

Upon careful consideration of the evidence in this case, I am convinced that the defendants have title to that area in dispute which lies north of Horse Pen Branch.

It is, therefore, ordered, adjudged and decreed that the Complaint in this case be dismissed.

It is further ordered, adjudged, and decreed that the boundary line between the lands of the plaintiff on the north and the lands of the defendants on the south be, and the same is hereby declared to be Horse Pen Branch.

It is further ordered, adjudged, and decreed that the plaintiff, Jerome Douglass, be required to pay the cost of this action.