516 S.E.2d 459

**F.C. ENTERPRISES, INC., Respondent,**

v.

**Ann Wyatt DIBBLE, acting as Personal Representative for the Estate of W.W. Dibble, Appellant.**

**Ann Wyatt Dibble, acting as Personal Representative for the Estate of W.W. Dibble, Appellant,**

v.

**C & M Petroleum Co., Inc., and F.C. Enterprises, Inc., Defendants,**

of whom **F.C. Enterprises, Inc., is the Respondent.**

No. 2968.

Court of Appeals of South Carolina.

Heard Feb. 9, 1999.

Decided March 29, 1999.

Rehearing Denied June 19, 1999.

Certiorari Denied Nov. 19, 1999.

Marion S. Riggs and Walter M. Riggs, both of Riggs & Riggs, of Manning, for appellant.

Bobbie C. Reaves, of Land, Parker & Reaves, of Manning; Stephen A. Spitz; and Timothy Youmans, of Collins Entertainment Corp., both of Columbia, for respondent.

HUFF, Judge:

This appeal involves two consolidated cases concerning property owned by C & M Petroleum Co., Inc. (C & M) which was sold to W.W. Dibble (Dibble)[1] at a public tax sale. C & M's tenant, F.C. Enterprises, moved for partial summary judgment alleging that Dibble only purchased such title as the defaulting taxpayer owned. The trial court granted summary judgment in favor of F.C. Enterprises. Dibble appeals. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

C & M was the owner of record of two adjoining tracts of land on August 10, 1992. On that date, C & M leased both tracts of land to F.C. Enterprises. F.C. Enterprises prepaid $155,000 in rent for the twenty year lease. On August 10, 1992, C & M also granted F.C. Enterprises an option to purchase the real estate. The option was incorporated by reference within the lease agreement. According to the agreement, F.C. Enterprises could exercise the option at any time during the twenty year lease period by paying the sum of $10,000. Paragraph 17 of the option provided that it shall be binding upon and inure to the benefit of the parties, their heirs, successors, assigns, and assignees. F.C. Enterprises recorded both a Memorandum of Lease and a Memorandum of Option with the county on September 14, 1992.

On March 17, 1993, the Tax Collector's office mailed C & M two notices of execution on the property in question. The notices indicated that C & M had failed to pay the 1992 taxes on the two tracts of land. The Tax Collector's Office did not receive payment and, as a result, two delinquent tax notices were sent to C & M in May 1993. The notices advised C & M that the 1992 taxes had not yet been paid and that the property would be seized and sold at a public auction if payment was not received by September 1, 1993. In August 1993, the Tax Collector posted notices of levy on the properties.

---

1. During the course of litigation, Mr. Dibble died and his estate was substituted in his place.

A public tax sale was held on October 4, 1993. The two tracts of land were purchased by Dibble. Thereafter, the Tax Collector sent notice to C & M regarding at least one of the parcels, advising of the right to redeem the property by October 4, 1994. The Tax Collector did not send any such notices to F.C. Enterprises. The Tax Collector delivered the tax deeds to Dibble on November 17, 1994.

F.C. Enterprises moved for summary judgment asserting that Dibble only purchased such title as C & M owned at the time of the tax sale. The trial court found in favor of F.C. Enterprises and held that the tax sale was subject to the lease and option. The trial court, noting F.C. Enterprises had properly exercised its option, found that F.C. Enterprises held title to the properties in question.[2]

## STANDARD OF REVIEW

Summary judgment is appropriate when it is clear there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Wilson v. Moseley*, 327 S.C. 144, 488 S.E.2d 862 (1997). In ruling on a motion for summary judgment, the evidence and all inferences which can be reasonably drawn therefrom must be viewed in the light most favorable to the non-moving party. *Id.*

## LAW/ANALYSIS

Dibble argues the trial court erred in granting summary judgment in favor of F.C. Enterprises. Dibble contends the tax sale was not subject to the lease and option agreements and therefore he owned the property in fee simple absolute. We disagree.

In South Carolina, the sale of property of a defaulting taxpayer is governed strictly by statute. *Von Elbrecht v. Jacobs*, 286 S.C. 240, 332 S.E.2d 568 (Ct.App.1985). The statutory scheme provides a mechanism for enforcing the collection of taxes. As of the thirty-first of December, all

---

2. During the course of this litigation, F.C. Enterprises filed a motion to exercise the option to purchase the two tracts of land. In an order dated October 29, 1996, the circuit court granted F.C. Enterprises leave to exercise the option by paying $10,000 in to the Court.

taxes for the ensuing year become a lien upon the property of the taxpayer. S.C.Code Ann. §§ 12–49–10 and 12–49–20 (1976). All taxes are due and payable between the thirtieth day of September and the fifteenth day of January after their assessment in each year. S.C.Code Ann. § 12–45–70 (Supp. 1998). "If the taxes, assessments, and penalties are not paid before the seventeenth day of March, the county treasurer shall issue his tax execution to the officer authorized and directed to collect delinquent taxes, assessments, penalties, and costs for their collection as provided in Chapter 51 of this title and they must be collected as required by that chapter." S.C.Code Ann. § 12–45–180(A) (Supp.1998). Upon payment by the successful bidder at the delinquent tax sale, the person officially charged with collection of delinquent taxes shall furnish the purchaser a receipt for the purchase money. S.C.Code Ann. § 12–51–60 (Supp.1998). The defaulting tax payer, grantee from the owner, or any mortgage or judgment creditor may, within twelve months from the date of the delinquent tax sale, redeem the real estate sold by paying the person officially charged with collection assessments, penalties and costs, together with eight percent interest on the whole amount of the delinquent tax sale bid. S.C.Code Ann. § 12–51–90 (Supp.1998). If the defaulting taxpayer, any grantee from the owner, or any mortgage or judgment creditor fails to redeem the property within the twelve months, the person officially charged with collection is required to issue a tax deed to the tax sale purchaser or the purchaser's assignee. S.C.Code Ann. § 12–51–130 (Supp.1998).

■ Dibble contends, because the lien for the subject taxes attached by law to the subject properties on December 31, 1991, the subsequent conveyance of a property interest, eight months after the lien attachment, would not defeat his valid tax deed. He relies on *Taylor v. Mill,* 310 S.C. 526, 426 S.E.2d 311 (1992) and *Von Elbrecht v. Jacobs,* 286 S.C. 240, 332 S.E.2d 568 (Ct.App.1985) in support of his position that his purchase of the two tracts of land at the tax sale were not subject to the lease and option agreements.

The *Taylor* case is clearly distinguishable from the case at hand. In *Taylor,* the property owner owed both federal and county property taxes. The Internal Revenue Service filed federal tax liens and eventually sold the property at a federal

tax sale. Taylor, the federal tax sale purchaser, was issued a tax deed a year later but did not record the deed until three years after he received the deed. In the meantime, the County seized the property and held a county tax sale. Mill, the county tax sale purchaser, recorded his deed one month after Taylor recorded his deed. The master held Mill was the legal title holder since Taylor purchased the property at the federal tax sale subject to county tax liens. He found Taylor lost his interest in the property when he failed to redeem the property within twelve months after Mill purchased it at the county tax sale. The Supreme Court affirmed the master, finding that the county tax lien had priority over the federal tax lien and that, once Taylor failed to timely redeem the property after the county tax sale, the title properly vested in Mill. In the case at hand there is no issue of priority between liens. We therefore find *Taylor* is not dispositive.

In *Von Elbrecht*, Steven Cox Realty failed to pay property taxes on a piece of property which it owned. The property was eventually sold to Jacobs, the highest bidder, at a public sale. Cox sold the property to George Von Elbrecht three months after the tax sale. Von Elbrecht recorded his deed shortly thereafter. The County conveyed the lot to Jacobs after the twelve-month redemption period expired. Jacobs attempted to take possession of the lot but Von Elbrecht refused to surrender possession of the property. Von Elbrecht brought an action to set aside the tax deed. The trial court found that Von Elbrecht was an innocent purchaser for value whose recorded deed was superior to Jacobs' subsequently recorded tax deed. This Court reversed holding that Von Elbrecht, as grantee acquiring an interest in the property from the delinquent taxpayer after the tax sale, but prior to expiration of the redemption period, could not defeat the interest of the tax sale purchaser where Von Elbrecht failed to redeem the property.

In *Von Elbrecht,* the court noted a defaulting tax payer whose property has been sold for taxes, such as Cox, holds title after a tax sale, but the title is "defeasible upon failure to redeem" within the statutory twelve month period. 286 S.C. at 244, 332 S.E.2d at 570. Thus, the deed by Cox to Von Elbrecht, after the tax sale, merely transferred the right to redeem. However, in the instant case, the delinquent taxpay-

er did not convey a property interest after a tax sale, but before. When F.C. Enterprises and C & M executed the lease and option agreements, the taxes were not yet even delinquent. At the time of the property interest conveyance from C & M to F.C. Enterprises, C & M was not a defaulting tax payer whose property had been sold at a tax sale, and its title in the property was not "defeasible upon failure to redeem."

The courts of South Carolina have traditionally followed the property rule that a purchaser cannot purchase more than his grantor owns. See *Cummings v. Varn*, 307 S.C. 37, 413 S.E.2d 829 (1992) (no deed can convey an interest which the grantor does not have in the land described in the deed); *Griggs v. Griggs*, 199 S.C. 295, 19 S.E.2d 477 (1942) (no deed can operate so as to convey a greater estate or interest than grantor has); *Hutto v. Ray*, 192 S.C. 364, 6 S.E.2d 747 (1940) (a life tenant can convey no more than his life estate). Moreover, this Court has previously stated that a purchaser at a judicial sale secures the same title and rights in the property as the person whose interest was sold. *Harrington v. Blackston*, 311 S.C. 459, 429 S.E.2d 826 (Ct.App.1993).

Applying the above case law and statutes, we find that Dibble's purchase of the two tracts of land at the tax sale in October 1993 was subject to the previously recorded lease and option. Although a lien for delinquent taxes relates back to December thirty-first of the prior year, the taxes do not become delinquent until January 15 of the following year. There was no tax delinquency at the time the parties executed the agreements and no tax sale had yet occurred. Dibble, as purchaser at a judicial sale, secured the same rights and title in the property as C & M owned at the time of the sale. Because C & M's rights in the property were subject to the lease and option with F.C. Enterprises at the time of the tax sale, Dibble purchased the property subject to the lease and option.

We therefore hold, as a matter of law, a purchaser at a tax sale acquires only that interest held by the owner of the property at the time of the tax sale. In viewing the evidence in the light most favorable to Dibble, we find that F.C. Enterprises is entitled to judgment as a matter of law. Ac-

cordingly, the trial court order granting F.C. Enterprises' motion for summary judgment is hereby

**AFFIRMED.**

HEARN and STILWELL, JJ., concur.